Mr. Dowdy May it please the Court, Michael Downey for the relator and appellant, August Bogina. This is a case arising under the False Claims Act. It alleges that there was a massive scheme of fraud in which the defendants Tutera and medical programs as well. We're here as similar to the last case on a motion to dismiss. This was a case that was dismissed outright without any chance to replead. This is the third amended complaint, although actually the prior amendments, the complaint is, as you probably know, was filed under seal. The first and second amendments were both done under seal before any sort of motion had been filed to add state law claims. And the third amendment complaint was filed voluntarily before the motions to dismiss were filed that are at issue in this case. With the Court's permission, I'm going to focus on the real merits of this. There's a lot of argument about which statute should apply. Frankly, I think at the end of the day it doesn't really matter. And the reason it doesn't matter is because Mr. Bogina satisfies both the public, he both avoids the public disclosure bar and constitutes an original source, if that bar did apply, that would allow his claims to proceed. The public disclosure bar basically prevents a party from serving as a parasite and relying upon some sort of public disclosure to also seek compensation to seek the bounty that is provided in a False Claims Act case. And so we look to see whether or not there is a substantial relationship between the allegations in the public disclosure and in the case that's being brought by the new relator. In this particular case, the original case is the Mason case, which we admit was publicly disclosed. The Mason case was a settlement only against Medline. Tutera was not a party to that case. In fact, there are 280 entities listed in the Mason complaint, in the operative second amended Mason complaint. None of those 280 entities are Tutera entities. In fact, as best as we can tell, none of those 280 entities are actually nursing homes. And the reason that's important is because one of the things that's at issue here is we believe the Mason complaint, in fact, the release language in the Mason case, indicates that it was a Medicare Part A and Medicaid federally funded settlement only that related to hospitals, to skilled nursing facilities, and certain other health providers, but did not relate to the non-skilled nursing portion of nursing homes. Tutera itself is a nursing home operator. It operates about 140 nursing homes. Presumably, some portion of these nursing homes would be skilled nursing facility beds, but probably a very small portion. The court may be familiar that often in a nursing home, you'll have different levels of care that a person may progress through. The reimbursements that would be sought for most of these beds would be under Medicare Part B, which is a very different program than Medicare Part A. And I specifically want to focus on one aspect of the Medicare Part A that is referenced in the covered conduct language of the Mason settlement because that's not present in the programs that Mr. Bogina has brought fraud claims under. Under Medicare Part A, one of the things that a provider has to do is to provide an annual report that basically summarizes the benefits that have been provided under Medicare Part A and certain other programs and indicates whether those were appropriate, whether there should be some sort of adjustment. In Medicare Part B, which is primarily a fee-for-service or fee-for-product program, there's no annual filing made. And in fact, the release language of the Mason case specifically indicates that it covers only covered conduct. And on the second page of that release, it defines covered conduct to say, in part, health care providers who are identified in the second amended complaint and or who submitted annual cost reports, such as Form 2552, Hospital, 2540, Skilled Nursing Facility, 1984, Hospice, 1728, Home Health Agency, and 256, RENA Facility, under Medicare Part A or Medicaid. The important things that are missing here is Mr. Bogina is not bringing claims related to programs where there were annual cost reports submitted. So these claims actually fall outside of the Mason settlement. The two-terra entities were not involved at all in the Mason case. They were not listed at all. In fact, as far as we know, when Medline paid the $85 million settlement they paid in the Mason case, none of those dollars accounted for the fraud that's alleged by Mr. Bogina. It all fell outside of it. Now, I realize $85 million sounds like a lot of money, but realize this was a case that was brought. There was no intervention by the federal government, and it was settled by Medline. Well, is this suit based on Medicare B? It is. Yes. Mr. Bogina's claims are primarily based on Medicare Part B. Well, do you think the government was unaware of Medicare Part A in the Mason settlement? The Mason settlement only deals with Medicare Part A and federally funded Medicaid. The short answer is yes. My question is, was the government aware of Medicare B? Well, certainly it would be aware of the reimbursement program. What we believe they were unaware of was that Medline, in addition to the fraud that was alleged in the Mason case, which related to its General Lines division, that there was a second fraud going on that was through the health care company division, a separate division, and dealt with the Medicare Part B. So when the federal government settled part of the claim, they only settled one fraud. They didn't settle the second. Do you think they were unaware of the Medline was involved in Medicare Part B? To answer your question again, I think they were probably aware that Medline was receiving reimbursements under all sorts of programs. Well, then why would it single out A? The settlement, the Mason case, only brought claims under Part A. Why? Because Mr. Mason only had knowledge as an original source, or adequate knowledge, to make a claim as to the General Lines division, which is where he worked. He didn't work in the health care company line. He didn't have any information about it. Well, having been alerted to the Medicare A fraud, and knowing that Medline was involved in Medicare B, why didn't the government go after Medline's Medicare B? Again, Judge, the US government didn't intervene in the Mason case. So it was the private litigants who did this, and they probably lacked the information. The government certainly could have intervened and broadened the case, and if they had, we wouldn't have a claim. But they didn't do so. Oh, you're saying the government wasn't in the Mason settlement? They had to be involved in approving the settlement, but they were not involved in the litigation. And I'm not trying to draw a distinction there. Who was involved in the litigation? It would have been private parties representing private litigants, Mr. Mason and his counsel. It was just Mason against Medline? Yes. And I believe there was one other entity involved, but the entity was a Medline subsidiary. It was not a Tutero-related party. Okay. So just to sort of wrap up that point or to focus back on that, certainly Mason could have been broader, but Mason was not broader. Mason focused on a single scheme of fraud related to, again, Medicare Part A and federally funded Medicaid. It only related to claims that were handled through this annual cost reporting. It did not provide a release for the conduct at issue here, and there's no indication that sort of fraud Medline may have been engaging in there. Which brings us to the second point. Even if there was a public disclosure that was substantially related to the Mason case, the Mason litigation and settlement, Mr. Bogina would still be able to proceed with his claims if he was an original source. Now the definition, and we argue a lot about which definition should apply, but the definition basically gets down to did he have some sort of independent knowledge that was either direct to him or that substantially added to the public disclosure. The Bogina case focuses on the conduct of Tutera, which is a nursing home operator. Again, nursing homes were not involved at all. It focused on different programs, and particularly important and what the district court seems not to pay much attention to was that in paragraph 91 of the Third Amendment complaint, there's very specific language there indicating that Mr. Bogina gained this information through conversations that he was a party to, which under Levesky would be sufficient, but also through a computer that Michael Tutera's widow gave him that he then did additional investigation. So this is someone who independently did investigation, akin to what this court found adequate in the city of Green Bay versus Lamer's case as being someone who would be an original source. So even if we apply the more rigid standard here, he came in with specific information that implicated Tutera in the fraud. He brought in information that he had gained through his own conversations, through his own investigation. This is not a case like Vlaser where he relied upon something told to him by his attorneys. And he has alleged he was a close confidant and a business consultant of Michael Tutera, and that he gained this through private means. So this is a situation where he would constitute an original source. So even if Mason is deemed to be a substantially related public disclosure, Mr. Bogina would still be able to proceed as an original source. He brought new information. He brought new programs that had been defrauded. He brought a new defendant, Tutera. And Tutera should not be allowed to escape liability because in the Mason case, Medline settled unrelated fraud that Medline engaged in with parties other than Tutera. Tutera simply was not involved in that case at all. If there are no further questions, I see I'm into my rebuttal time. Okay. Thank you, Your Honor. That's fine. Yeah. Thank you, Mr. Downing. Mr. Sear? Good morning, Your Honors, and may it please the Court. I represent the Tutera defendants in this appeal. And as we stated in our briefing, the district court judgment should be affirmed in all respects because the district court correctly ruled as a matter of law that there had been a prior disclosure of the allegations or transactions upon which Relator Bogina bases his claims and because Relator Bogina is not an original source of the information upon which the allegations are based. Now, how do we know that as a matter of law? Well, we know it because of what is specifically alleged in the prior Mason complaint. Although Mr. Bogina attempts to parse the language that is in the second amended complaint in Mason, Mason alleged that Medline engaged in a conspiracy with all of its customer providers, not some of its customer providers, but all of its customer providers, not just hospital providers, not just nursing home providers, but all of its customer providers. And it said that Medline engaged in a conspiracy to cause all of its providers to file false cost reports with all federal healthcare programs. It said that they were principally claims and reports submitted to Medicare and Medicaid, but Mason specifically alleged in paragraphs 9, 13, and 14 of his second amended complaint that all of the interim and final claims for payment and all cost reports submitted by all Medline customer providers were false, fraudulent, and violated the False Claims Act. All is all. There cannot be a broader conspiracy than all. There cannot be a deeper conspiracy alleged than all. So no matter how Mr. Bogina's briefing and argument attempts to parse this issue, Mason alleged a pervasive, wide, and complete conspiracy amongst Medline and its customers, and therefore there was a prior public disclosure relating to Medline and all of its customers. Now keep in mind here that although Medline was the only defendant in the Mason lawsuit, Medline does not act in a vacuum. That is, Medline does not submit cost reports and bills to these federal programs by and large. Instead, Medline does business with its customer providers who submit cost reports and claims for payment to the various federal programs. When there are allegations such as there were in Mason and a settlement as there was in Mason, it didn't simply just relate to Medline activities. It related to Medline's activities with its customer providers who were submitting cost reports and claims for payment to the federal government. Were all of these in the Mason case then? I don't know how they divided it up, but did they refer to all customers or providers or whatever you call them that would include Tutera? Yes, although Tutera is not identified by name. Mason used a definition, a capitalized term, in the second amended complaint, quote, providers as the health care providers with whom Medline did business. And so that's not just hospitals. It's not just nursing homes. It's all. But all that's required for an original source is knowledge that is independent of and materially adds to the publicly disclosed allegations. So his knowledge of whatever it is, what's the other definite, Turera?  Turera, okay. So he knows about Turera, who's not mentioned in the Mason litigation. And question, does he add to the publicly disclosed allegations? Well, the publicly disclosed allegations don't mention Turera, so he's added that. So why isn't that enough? Under the case law from this circuit, Your Honor, where there has been a prior public disclosure that is industry-wide or pervasive, then there is not a need for the prior public disclosure to have named specific players. That's not what the statute says, because the statute assumes there are publicly disclosed allegations. And if the knowledge is independent of and materially adds, that's all you need to be an original source. Well, Your Honor, with all due respect, that's parsing two elements here. As to whether there's a prior public disclosure, the case law from this circuit, particularly the Gear case, points out that where there is industry-wide fraud and the government has the basis to understand the allegation and to investigate, then players do not have to be identified. Well, that's not what the statute says. Your Honor, I believe you're referring to the original source prong of the statute. Yes. Okay. Now, what we need to keep in mind is that there are two versions of that original source definition that are in play, the pre-March 23, 2010 version and the post-March 23, 2010. Well, I don't see any difference. Well, Your Honor, under the pre-March 23, 2010 version, it's required that the relator have direct knowledge. Yeah, well, I don't know what direct knowledge means. Well, Your Honor, there's been a number of cases that have attempted to fill out and describe that, and it's things that have been seen by the relator's own eyes. Well, that's ridiculous, own eyes. Come on. Well, Your Honor, let's take some of the examples from this circuit. For example, Lammers in the City of Green Bay case was determined that he was an original source because he had direct knowledge because he sat and witnessed the buses going on these bus routes that he contended amounted to a scheme to defraud. Doesn't Bodega have direct knowledge of Tara? No, Your Honor. Under the specific factual allegations made by Mr. Bodega in the third amended complaint, that is his fourth effort at pleading this, he says that his knowledge is limited to conversations that he had with Michael Tutera, a brother of the Joseph Tutera that's a defendant in this case, in 2008 and 2009, and documents provided to him by Michael Tutera either before his death in May of 2010 or off Michael Tutera's computer after his death. That is not direct knowledge. Probably not. I don't understand. It's not material that he saw with his own eyes. Oh, come on with the own eyes stuff. Your Honor, in this court... Look, that's not right. You can hear something, you don't have to see something. Well, Your Honor, he... His eyes are the only source of knowledge. He did not participate in the scheme. Nor is participation the same thing as direct knowledge. You can observe without participating. But Mr. Bodega did not observe the people involved in the scheme that he was alleging. To give an example, Your Honor... But it's not... For example, take the Levesky case decided by this court. In Levesky, this court determined that it was sufficient where Mr. Levesky was a 10-year employee of the defendant and personally engaged in some of these activities and personally observed. This court used that phrase... Stop with that observed. There's nothing in the word direct that means it has to be observed. Your Honor... Anyway, I think the new statute is a useful clarification of the old one. I don't think they're inconsistent. I think the new statute explains better when it says knowledge that is independent of and materialized. I don't think direct is a helpful word. Well, materially adding, Your Honor, is a problem in and of itself in that if Mason alleged, which he did, that Medline engaged in this conspiracy with all of its customers and Tuterit is one of its customers, then there is no materiality to the disclosure of Tuterit. That's not true. Because the mere fact they say Medline does this with all its customers, you can't stop there. Your Honor... Isn't the bigger problem that the post-amendment conduct allegations are made on information and belief? Yes, Your Honor. And so we can't possibly have first-hand... Under United States Supreme Court precedent that starts with the Hughes case, the amendment to the statute is not to be applied retroactively, and the amended statute is only to apply to acts alleged to have occurred after the effective date. And in this case, in order to apply the current definition of original source, can relate only to conduct alleged to have occurred after March 23, 2010, which Mr. Bogina, in his fourth effort to plead, confesses that he has no knowledge regarding the scheme after December 31, 2009, and on information and belief, believes that those activities continue. But he can't possibly be the original source if he's making this allegation on information and belief. Absolutely. And under a handful of cases, particularly a couple cases decided by Judge Posner, points out that fraud allegations based upon information and belief plead nothing. To paraphrase the decision in the Grenadier case, when a relator or a plaintiff contends that an event occurred but they don't know how they know that the event occurred or that the events continue, that's nonsense pleading. And so under all of the claims that are not made on information and belief in this case are under the prior statute that require direct knowledge of the transactions and allegations, and Mr. Bogina at best has second- or third-hand knowledge according to his own allegations. Okay. Thank you. And we'll hear from Ms. Pinciak Madden. Good afternoon, Your Honors. May it please the Court, Monica Pinciak for Medline. I think as an initial matter, I just want to jump straight into the original source rule, and it's our position that Bogina is not an original source because he lacks direct knowledge of the fraudulent scheme he alleges. Courts have said that the touchstone of the original source rule is to encourage persons with first-hand knowledge of the fraud and those who are either close observers or otherwise involved in the fraud to come forward, and this makes sense. Congress here is intending to limit the number of relators who can come forward in an instant where there has been a prior public disclosure. Bogina is not alleging that he was a close observer of the fraud or otherwise involved in the fraud. He's relying on information imparted to him in a conversation occurring in 08 and 09 by an alleged participant in the fraud, the now-deceased Michael Dutera. Right. He never worked at either Medline or the Dutera group nursing homes. That's correct. He is not a traditional relator insider. Bogina's conversations with Michael Dutera do not provide him with direct knowledge of the fraud he alleges. And in fact, Michael Dutera stopped working at the Dutera group in 2000? Yes, much earlier on, but there are allegations that he did continue to participate and facilitate certain deals involving Dutera and Medline. I would submit Bogina is not like the relators in Lammers or Lovesky. The relators in those cases had direct knowledge based on their own personal and specific observations. The same cannot be said of Bogina. He's not relying on his own personal specific observations. He's relying entirely on the personal observations of someone else who he had a conversation with. There's an issue of documents and whether those documents can sufficiently provide Bogina with direct knowledge of the fraudulent scheme he alleges. Bogina does not allege that these documents in and of themselves tell a story of fraud, nor could he, because the specific documents... Why do you say that he can't rely on what is told him by somebody else? The standard is direct knowledge, first-hand knowledge, personal observation... Yeah, I'll explain that. ...close to the situation. Well, what's the sense of that? The sense of that is... Most people's knowledge comes from what they read or from what people tell them. Correct. That's right. So you're suggesting that you have to have actual observation? I'm not suggesting that... Because I'm very upset by the fact that Tererra is being, you know, extorted by deadline, something like that. Why isn't that direct knowledge by the person who hears this confession? I guess the way I would answer that, Your Honour, is we have to look at this within the specific perspective here that there has been a prior public disclosure. Congress is demanding more and saying that if there has been a prior public disclosure, you've got to come forward with very specific personal information. Well, Tererra's disclosure to Bodinga, that's not a public disclosure. No, but the Mason allegations are. The Mason allegations serve as the prior public disclosure here, and Bodinga's allegations are substantially similar to those allegations in Mason. You're making a separate point. Yes. I thought your point was that you can never rely on information that is told you as a basis for bringing one of these false claims. I think that's in part, and a very similar issue came up in... that can be a very direct source of information about bad things happening. So why would you want to exclude that categorically as a basis for a false claim suit? Because the information is without some element of personal observation, whether it's seeing, hearing. Look, that's ridiculous. People's knowledge is not limited to what they actually see. It includes what they read and what people tell them. Correct. And if someone confesses in a way that seems truthful, and it's a confession to some serious misconduct, then why does not that make the person who hears this an original source? Your Honor, the answer to that question is the statute is what the statute is. The statute doesn't say anything that supports what you've just said. It says knowledge is independent of and materially adds to the publicly disclosed allegations. Now, the publicly disclosed allegations wouldn't include a confession by Tererra that his company is engaged in fraudulent activities with Medline. We submit here that those conversations between Michael Tutera and Bogina are not direct within the meaning of the statute. These are second-hand allegations. You're missing the whole point. People learn from what they hear and read, not just from what they observe. Don't you understand that? I do understand that. My understanding is that the cases require more, given the particular posture. That makes the law ridiculous. That may be the case, Your Honor. That may be the case. Was there anyone who had any information other than Tutera himself, I guess? This is what they're saying, that this was undisclosed and this was a secret that supposedly Bogina learned of otherwise not disclosed information. It was separate from Mason's case. There are no allegations to that effect, Your Honor. I see my time is up. We ask the Court to affirm the judgment of the District Court. I'm sorry. I just want to make sure that this information that he gathered from Tutera and, I guess, his widow, this is, I guess you'd say, secret. Nobody ever said anything about it. It was only disclosed to Bogina. Is there some reason that's not the case? I would say that's not the case because the allegations that Bogina has identified fall within the scope of the Mason complaint. So in a much broader sense, these kinds of allegations were the subject of the prior Mason litigation. Was it something that somebody else should have discovered just because it's? It's entirely possible it could have been discovered, but to my knowledge, it was not discovered. If it's not discovered, then isn't it original? I think it's not. He's still not an original source. Again, going back to the point about him lacking direct knowledge and to go to a point about Levesky, which relied on certain conversations with direct participants in the fraud, I don't think the Court was holding there that mere conversations with someone who participates in the fraud somehow converts you into an original source. There were additional factors that were present. The allegations in that case were based on the relator's own personal observations. She was a long-time employee, was intimately involved with the transactions that were at issue in the allegations, which simply is not the case here. We have Bogina relying on second-hand information from Michael Tutera. So how does Tutera, if it's involved in this fraud, ever get prosecuted? Certainly, the scope of our... The settlement agreement that we've reached only pertains to Medline. There's nothing that could preclude the government from taking additional action in this case. Okay, well, thank you, Ms. Stiegman. So, Mr. Downey? Thank you. I want to focus on three specific points that have been raised. Opposing counsel at the very end there brought up one of the key ones. The Levesky case does primarily rely upon conversations, and on page 837 of the opinion it states, virtually all of Levesky's evidence in support of her allegations against ITT comes from conversations to which she was a party. For instance, in her deposition, Levesky makes some references to information she learned from other ITT employees, but for the most part, Levesky discusses statements that were made directly to her by her supervisor at ITT. That, in and of itself, these conversations that Mr. Bugina said he had with Michael Tutera before Mr. Tutera was murdered, should suffice. That having been said, Mr. Tutera doesn't stop there. In paragraph 91 of the Third Amended Complaint, which is the operative complaint here, he states, all allegations herein regarding kickbacks and bribes are based on information learned firsthand by Relator Bugina and or Communications Relator Bugina engaged in and or witnessed, including the documentation and ESI, which is electronically stored information, provided to Bugina by Michael Tutera and his widow, as supplemented by the results of his attorney's investigation. Attached to the Third Amended Complaint are actually a check that was written that was part of the scheme and several agreements, including a Walnut Creek agreement that related to an entity that was basically created to provide for kickbacks, where a bedline purchased part of an entity that Tutera set up so that they could then receive money through that. This is all information that he actually evidences with documents, and again, as Judge Posner has indicated, under Levesque, conversation should be enough, but he doesn't stop there. With regard to the public disclosure, there were references made to paragraphs 9, 13, and 14 of the Second Amended Mason Complaint, talking about all providers and something like that being all-encompassing. That's simply not the case. Providers is a defined term. It doesn't say everyone to whom bedline ever sold. It's rather talking about the medical providers at issue in that case. In paragraphs 13 and 14 of the Mason Complaint, there are specific references to entities that submit annual cost reports, which again would apply only to Medicare Part A. As Opposing Counsel indicated at the end there... So the definition of the term providers in the Mason litigation did not include the Tutera group? Frankly, the definition is unclear. They indicate that there are providers at issue, but when they then start referencing, they start talking about annual reports. Realize that Mason didn't know there would be a second lawsuit brought, so he didn't know, oh, I should leave out the health care company sales. He simply said the providers that I know about the fraud in, which by the way was enough fraud to result in an $85 million settlement, was sufficient. He didn't try to narrow it. He had no reason to. Well, right, but neither did the government, right, in accepting this settlement? And again, the government certainly could... The government treated it as comprehensive? The government could have gone broader. Frankly, the government may have even gone broader. We don't have any public disclosure of that, and without the public disclosure, the public disclosure bar doesn't apply. So if the government did all sorts of investigation and never found the Tutera scheme, that doesn't prevent Mr. Bogina from being the first person to bring it forward. It's only was there a public disclosure, and what we're saying is Mason focuses on a Medicare Part A scheme. It settles a Medicare Part A scheme. It focuses on the general line sales. It doesn't talk about the health care company sales. It doesn't release those claims. How could it be a public disclosure of something that wasn't covered? To go back to Judge Posner's question of does Tutera get off without any problem, does Tutera, and frankly, does Medline for this second scheme get off because they paid a settlement on the first one and apparently no one caught them on the second scheme? Now, obviously the schemes are structured somewhat the same. They're kickbacks and rebates, but that doesn't necessarily mean it's the same scheme. The last comment I want to bring up, and I apologize, I am over time. There's a question about information and belief, and I think one of the things that may be important for this court to keep in mind, this lawsuit was actually filed in 2011. It was under seal for a while. It was amended. It was investigated and finally released. So it was, frankly, not filed too long after the public disclosure bar was modified. The information and belief language is really just an indication that the fraud that was going on that Mr. Bugini clearly had information about and had independently investigated, as he alleged, to his knowledge hadn't ended, and it shows that the Rule 9b pleading standard doesn't fit perfectly in the context of a False Claims Act case. Here there's clear allegations of what was going on. Certainly, if he's allowed to do discovery, he may have to amend the complaint. He may have to drop anything related to later claims, but that should be something he should be allowed to do through discovery. Therefore, Mr. Bugini asks that the dismissal of this case be reversed and that he be allowed to proceed with discovery to fully and adequately figure out the extent of the fraud that was engaged by Tutera and Medline. Thank you. Okay, thank you very much, Mr. Downey and Mr. Cyr and Ms. Minyak, Matt, and Bob.